**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

**FOUNTAIN ENTERPRISES, LLC d/b/a**
**ANYTIME FITNESS - WEST POINT,**
individually and behalf of all
others similarly situated,

   Plaintiff,         **CLASS ACTION**

v.               **JURY TRIAL DEMANDED**

**MARKEL INSURANCE COMPANY**,

   Defendant.

**CLASS ACTION COMPLAINT**

Plaintiff Fountain Enterprises, LLC d/b/a Anytime Fitness – West Point ("Fountain" or "Plaintiff"), both individually and on behalf of all others similarly situated, files this class action Complaint against Defendant Markel Insurance Company ("Defendant" or "Markel"), and in support states the following on information and belief based on further reasonable investigation and discovery, except where specifically identified as being based on personal knowledge:

**INTRODUCTION**

1.  On personal knowledge, Plaintiff Fountain is a Mississippi limited liability company. Fountain is a franchisee of Anytime Fitness, LLC ("Anytime Fitness"), and operates gyms in four (4) locations - Fulton, Mississippi; West Point, Mississippi; Brewton, Alabama; and Monroeville, Alabama.

2.  Upon information and belief, there are over 4,500 Anytime Fitness franchises, with franchises located in all 50 states.

3.  Fountain became a franchisee of Anytime Fitness in 2009. At the time it elected to become a franchisee of Anytime Fitness, the franchisor advised Fountain that Markel was the

1

preferred insurance provider for Anytime Fitness franchisees, such as Fountain. Subsequently, Fountain began purchasing insurance coverage offered by Markel.

4.      On or about April 1, 2019, Fountain purchased a commercial policy of insurance issued by Markel with policy number HCP20010543-05 and on or about April 1, 2020, Fountain renewed a commercial policy of insurance with Markel with policy number HCP20010543-06.[1] Fountain paid for and received the *Health Clubs Commercial Property Elite Enhancement* (Form MCP 1217 09 14) coverage with its Policy.

5.      The Policy is a bilateral contract: Fountain agreed to pay monthly premiums to Markel in exchange for Markel's promises of coverage for all risks of loss except those specifically and unambiguously excluded.

6.      Fountain reasonably expected that claims for loss of business income and extra expenses arising from the inability to use its physical locations would be paid unless specifically and unambiguously excluded.

7.      Specifically, the *Health Clubs Commercial Property Elite Enhancement* (Form MCP 1217 09 14) endorsement to the Policy protects Fountain against the actual loss of business income due to a suspension of Fountain's operations. Along with this business income coverage, Fountain also had in effect "Extra Expense" coverage under which Markel promised to pay necessary expenses Fountain incurred during a period of restoration that it would not have otherwise incurred if there had been no direct physical loss of the property

8.      The *Health Clubs Commercial Property Elite Enhancement* (Form MCP 1217 09 14) endorsement to the Policy also provides additional "Civil Authority" coverage, under which Markel promised to pay for loss of business income Fountain sustained and necessary "Extra

---

[1] Policy number  HCP20010543-06 and policy number HCP20010543-07 are collectively referred to as the "Policy." *See* attached Exhibit A.

Expense" Fountain incurred caused by actions of civil authorities "that prohibits access to the described premises."

9.      Fountain complied with its obligations under the Policy by timely paying all premiums required.

10.      Effective March 24, 2020, Fountain was forced to suspend business operations for its Anytime Fitness franchise located in Fulton, Mississippi, by Order of the City of Fulton. The Order was issued due to existing emergency circumstances warranting immediate action as a result of the recent outbreak of infections and deaths associated with "Coronavirus Disease" (COVID-19).[2]

11.      On March 24, 2020, the City of West Point, Mississippi, issued an Order prohibiting any "gatherings of more than ten (10) people . . . within the boundaries of the City of West Point, including but not limited to, . . .fitness centers." The Order was issued due to the existence of a public emergency, "which had resulted in substantial injury or harm to life, health and property within the City of West Point caused by COVID-19."[3]

12.      Clay County, Mississippi, wherein the City of West Point is located, likewise entered a resolution on March 24, 2020, finding that "the risk of spread of COVID-19 within Clay County, Mississippi constitutes a public emergency that may result in substantial injury or harm to life, health, and property within Clay County, Mississippi."[4]

---

[2] *See* attached Exhibit B, Emergency Order Limiting the Scope of Business Practices and General Activities within the City Limits of the City of Fulton.
[3] *See* attached Exhibit C, Resolution of the Board and Mayor and Selectmen of the City of West Point, Mississippi, Declaring a Civil Emergency, and for the Control of Contagious and Infectious Disease and Related Purposes.
[4] *See* attached Exhibit D, Resolution of the Clay County Board of Supervisors Declaring an Emergency, and for Control Contagious and Infectious Disease and Related Purposes.

13.     Effective April 6, 2020, at 5:00 p.m., and as a direct result of Mississippi Governor Tate Reeves" Shelter-In-Place Order, Fountain was required to cease operation of its Anytime Fitness franchise located in West Point, Mississippi, and continue suspension of its Anytime Fitness franchise located in Fulton, Mississippi. The Shelter-in-Place Order issued by Governor Reeves was issued in response to COVID-19 and the existence of a public emergency related to the same which posed substantial injury or harm to life, health and property within Mississippi.[5]

14.     Effective March 28, 2020, at 5:00 p.m., pursuant to the Order of the State Health Officer of Alabama, Fountain was forced to close its Anytime Fitness franchises located in Brewton, Alabama and Monroeville, Alabama.[6] The Order was based on the presence of "Coronavirus Disease 2019 (COVID-19)" in Alabama and acknowledged that COVID-19's presence jeopardized health in public places within Alabama.

15.     As a result of the Orders of the various civil authorities, Fountain suffered, and/or continues to suffer, significant and injurious losses and expenses directly related to the inability to use the physical locations covered by the Policy.

16.     The Policy obligated Markel to provide coverage for, and to pay, business income losses and extra expense losses resulting from the suspension of Fountain's operations, including suspensions resulting from actions of civil authorities.  Notice of loss was reported to Markel on April 18, 2020.[7]

17.     In response, on April 23, 2020, Markel reneged on these obligations and wrongfully failed to fulfill its contractual obligation to provide coverage for, and pay, Fountain's business income losses and extra expense losses resulting from the suspension of Fountain's operations,

---

[5] *See* attached Exhibit E, <u>Executive Order No. 1466.</u>
[6] *See* attached Exhibit F, <u>Order of the State Health Officer Suspending Certain Public Gatherings Due to Risk of Infection by COVID-19</u>, dated March 27, 2020.
[7] *See* attached Exhibit G, Markel Coverage Disclaimer Letter, dated April 23, 2020.

including suspensions resulting from actions of civil authorities. It did so a mere four business days after Fountain's notice of loss, showing Markel engaged in no meaningful investigation of the claims or review of the Policy. The actions of Markel in improperly denying Fountain's claim were a blatant disregard for the contractual rights of Fountain resulting in a material breach of Markel's duties and obligation owed under the Policy and deprived Fountain of the benefit of its bargain, causing serious financial damages to Fountain.

18. On information and belief, there are approximately 4,500 Anytime Fitness locations. On further information and belief, as the preferred insurance provider for Anytime Fitness franchisees such as Fountain, many other franchisees have the same or similar policies issued by Markel and providing the same or similar business income, extra expense coverage and extended business income coverage. Fountain believes, and therefore alleges, that Markel has also wrongfully, capriciously and arbitrarily denied coverage and payments to these other franchisees.

## THE PARTIES

19. On personal knowledge, Plaintiff Fountain is a limited liability company organized under the laws of and existing in the State of Mississippi with a principal place of business located at 309 Highway 15 South, New Albany, Mississippi 38652. Fountain owns and operates four (4) Anytime Fitness locations amongst the roughly 4,500 franchises throughout the United States.

20. Defendant Markel Insurance Company is a corporation organized under the laws of Illinois with its principal place of business in the state of Illinois at 10 Parkway North Boulevard, Suite 100, Deerfield, Illinois, 60015. Markel Insurance Company is the issuer of the Policy. Markel is authorized to write, sell, and issue insurance policies providing property and business income coverage. At all material times hereto, Markel conducted and transacted business through the

selling and issuing of insurance policies, including but not limited to selling and issuing commercial property coverage to Plaintiff and all other Class Members as defined *infra*.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction over the claims asserted in this action under 28 U.S.C. § 1332 because there is complete diversity between Defendant and at least one member of each class; there are more than one hundred members of each class; and the amount in controversy exceeds $5,000,000 exclusive of interest and costs. This Court also has subject matter jurisdiction under 28 U.S.C. §§ 2201 and 2202 and is authorized to grant declaratory relief under these statutes.

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Markel resides in this district.

23.     This Court has personal jurisdiction over the Defendant because it is incorporated in the State of Illinois.

## FACTUAL BACKGROUND

### *The Policy*

24.     On April 1, 2019, and again on April 1, 2020, Plaintiff renewed the Policy, a health club insurance policy issued by the Defendant. The Policy has a policy period of April 1, 2019, to April 1, 2020, and April 1, 2020 to April 1, 2021. The Policy insures property of the Plaintiff located at 104 Mueller Brass Road, Fulton, Mississippi 38843; 45 Airport Road, West Point, Mississippi 39773; 465 Pike Street, Suite C, Monroeville, Alabama 36460; and 1650 Douglas Avenue, Brewton, Alabama 36426.

25.     The Policy, in the Building and Personal Property Coverage Form, states:

**Coverage**

> **We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.**

26.     The Policy contains both a "Specified Cause of Loss" category and "Covered Cause of Loss" category, the latter of which is an all-risk coverage form, meaning that all risks are covered unless specifically excluded or limited by the Policy. All risks coverage is defined by limitations and exclusions in the Policy and in the Policy, Defendant agreed: "When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy."

27.     In the Policy, because "Special" was shown on the Declarations page, Defendant promised to pay for losses of business income sustained as a result of Covered Causes of Loss not otherwise excluded or limited under the Policy.

28.     The *Health Clubs Commercial Property Elite Enhancement* (Form MCP 1217 09 14) modifies the Building and Personal Property Coverage Form Causes of Loss-Special Form to include Additional Coverages for Business Income and Extra Expense.

29.     So long as the Plaintiff sustained a loss or damage caused by or resulting from a Covered Cause of Loss, the Defendant promised:

> **Business Income And Extra Expense**
>
> **(1)     Coverage**
>
> **We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises that are described in the Declarations of the policy to which this endorsement is attached. The loss or damage must be caused by or result from a Covered Cause of Loss...**

30.     Neither "damage" nor the phrases "direct physical loss" and "damage to property" are defined by the Policy. However, "suspension" is defined as "1. The shutdown or cessation of your business activities; or 2. That a part or all of the described premises is rendered untenantable."

31.     The Policy also provides Extended Business Income coverage, as follows:

**Extended Business Income**

**If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:**

   **(i)     Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and either "operations" are resumed or tenantability is restored; and**

   **(ii)    Ends on the earlier of:**

      **i.    The date you could restore your "operations" or restore tenant occupancy, with reasonable speed, to the level which would generate the business income amount or "rental value" that would have existed if no direct physical loss or damage had occurred; or**

      **ii.   90 consecutive days after the date determined in (c)(i) above.**

**However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located. Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.**

32.     In addition to promising to pay for loss of Business Income, under the Policy, Defendant also promised to pay for certain necessary "Extra Expense." Extra Expense means

8

expenses that the policyholder incurs to, for example, minimize the suspension of business operations.

33.    The Policy also provides additional "Civil Authority" coverage as follows:

**(a) Civil Authority**

**In this Additional Coverage, Civil Authority, the described premises are premises to which this endorsement applies.**

**When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:**

**(i)    Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and**

**(ii)    The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.**

34.    The Defendant promised to pay the Plaintiff for actions of civil authorities if a Covered Cause of Loss caused damage to property other than property at the Plaintiff's premises, as described in the Declarations page, and that the Plaintiff suffered actual loss due to civil authorities prohibiting access to Plaintiff's premises. For this coverage to be payable, besides showing a Covered Cause of Loss caused damage to property other than that property at the Plaintiff's premises and the Plaintiff suffered actual loss, the Plaintiff needed to show (1) that access to the area immediately surrounding the damaged property is prohibited as a result of the

9

damage; (2) that the Plaintiff's premises were not more than one (1) mile from the damaged property; and (3) that the actions of the civil authority was taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage.

35. The Business Income and Extra Expense as well as the Extended Business Income coverages are separate, independent and not mutually exclusive of the coverage for Civil Authority; thus, the Plaintiff theoretically could recover under any one of these coverages or all of these coverages at the same time.

36. Unlike the Business Income and Extra Expense coverage, the Civil Authority coverage does not require the Plaintiff to show a "direct physical loss" and "damage" to its property. Instead, the Plaintiff is required to show that there was "damaged property" in the area immediate to the Plaintiff's premises and that "action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage." Neither "damaged property" nor "dangerous physical conditions" is defined by the Policy.

### *History of COVID-19*

37. On December 31, 2019, the World Health Organization reported people in China were becoming sick due to a mysterious form of pneumonia.

38. On January 11, 2020, China reported its first death from the mysterious form of pneumonia.

39. On January 21, 2020, the first confirmed case of the mysterious form of pneumonia was reported in the United States.

40.     On January 30, 2020, for only the sixth time in its history, the World Health Organization ("WHO"), declared the outbreak of the mysterious form of pneumonia a Public Health Emergency of International Concern.

41.     On February 11, 2020, the WHO announced COVID-19, also known as coronavirus disease, as the name for the new mysterious form of pneumonia.

42.     On February 29, 2020, the first death caused by COVID-19 was reported in the United States.

43.     On March 13, 2020, President Trump declares the outbreak of COVID-19 to be a national emergency.

44.     As of March 17, 2020, COVID-19 was reported to be present in every state in the United States.

45.     As of March 26, 2020, the United States had more confirmed cases of COVID-19 than any other country in the world.

***Actions of Civil Authorities for Fulton, Mississippi***

46.     On March 23, 2020, effective March 24, 2020, the City of Fulton issued an Order recognizing "the recent outbreak of infections and deaths associated with 'Coronavirus Disease' (COVID-19)....that Fulton has the authority to promulgate and enforce regulations designed to limit the spread of contagious or infectious diseases...Fulton has determined that a local emergency exists and that immediate actions must be taken and enforced by the City of Fulton."[8]

---

[8] *See* attached Exhibit B.

47.     The City of Fulton, in the Order, distinguished "essential service business" from non-essential business.[9] Gyms and/or fitness centers such as Anytime Fitness were not deemed "essential service businesses."[10]

48.     For non-essential business, the City of Fulton permitted curbside service, delivery or drive-through service if a particular non-essential business was able to provide such service.[11] If a particular non-essential business was unable to provide curbside service, delivery or drive-through service the City of Fulton ordered "said business shall be closed to the general public."

49.     The actions of the City of Fulton forced the Plaintiff to cease and suspend its business operations.

### *Actions of Civil Authorities for West Point, Mississippi and Clay County, Mississippi*

50.     On March 24, 2020, the City of West Point issued an Order recognizing "the emergence and risk of spread of COVID-19 within Mississippi constitutes a public emergency that has resulted in substantial injury or harm to life, health and property within Mississippi, and in the City of West Point...the State of Mississippi and the City of West Point are being adversely affected by the outbreak of the novel coronavirus, COVID-19, and there exists a continued threat to the public's safety, private property and the social and economic welfare of this City and State...the Board of Mayor and Selectmen of the City of West Point finds that COVID-19 is a natural disaster which has caused and will continue to cause injury, illness and/or death to persons to such extent that extraordinary measures must be taken to protect the public health, safety, and welfare of citizens and visitors...."[12]

---

[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *See* attached Exhibit C.

51.     The City of West Point, in the Order, directed "no gatherings of more than ten (10) people may occur or be held within the boundaries of the City of West Point, including but not limited to, ...fitness centers."[13]

52.     Clay County, Mississippi, wherein the City of West Point is located, likewise entered a resolution on March 24, 2020 finding that "the risk of spread of COVID-19 within Clay County, Mississippi constitutes a public emergency that may result in substantial injury or harm to life, health, and property within Clay County, Mississippi."[14] The Board of Supervisors' directives, as the same pertain to fitness centers such as Anytime Fitness, were consistent with those of the City of West Point.

53.     The actions of the City of West Point and Clay County forced the Plaintiff to cease and suspend its business operations.

### *Actions of Civil Authorities for the State of Mississippi*

54.     On April 1, 2020, "Governor Tate Reeves issued a Shelter-In-Place order, effective April 6, 2020 at 5:00 p.m., because of COVID-19."[15] Under the Shelter-in-Place Order, it was ordered that "all businesses and non-profit entities operating within the State of Mississippi, except for Essential Business or Operations identified in Executive Order No. 1463 as Supplemented (which is incorporated herein by reference), shall cease operation and all activities except Minimum Operations as defined herein."[16]

55.     The Order specifically held that "fitness and exercise gyms" are not considered essential healthcare and, therefore, must cease operations.[17]

---

[13] *Id.*
[14] *See* attached Exhibit D.
[15] https://www.msema.org/news/city-and-county-shutdowns-due-to-covid-19/
[16] *See* attached Exhibit E.
[17] *Id.*

56.     The Shelter-in-Place Order also found, "the worldwide outbreak of COVID-19 and the effects of its extreme risk of person to person transmission throughout the United States and Mississippi significantly impact the life and health of our people, as well as the economy of Mississippi...the risk of spread of COVID-19 within Mississippi constitutes a public emergency that may result in substantial injury or harm to life, health and property within Mississippi...additional measure are needed to further disrupt and slow the spread of the COVID-19 virus within the State...and certain business and public amenities need to be temporarily closed to the public."

57.     The actions of the State of Mississippi forced the Plaintiff to cease and suspend its business operations.

### *Actions of Civil Authorities for the State of Alabama*

58.     On March 13, 2020, Alabama Governor Kay Ivey declared a state public health emergency exists in the State of Alabama.

59.     On March 27, 2020, the State Health Officer of Alabama issued an Order which provided, "Coronavirus Disease 2019 (COVID-19) has been detected in Alabama... the appearance of COVID-19 in the State poses the potential of widespread exposure to an infectious agent that poses significant risk of substantial harm to a large number of people... the State Board of Health has designated COVID-19 to be a disease of epidemic potential, a threat to the health and welfare of the public, or otherwise of public health importance... further social distancing measures are necessary to be implemented on a statewide basis to prevent the spread of COVID-19."[18]

60.     The Order, effective March 28, 2020 at 5:00 p.m., closed, among other businesses, fitness centers and commercial gyms to non-employees.[19]

---

[18] *See* Exhibit F.
[19] *Id.*

61. On April 3, 2020, the State Health Officer of Alabama issued an Amended Order finding the "Coronavirus Disease 2019 (COVID-19) has been detected in Alabama...the State Board of Health has designated COVID-19 to be a disease of epidemic potential...a state of public health emergency exists in the State of Alabama...Ala. Code §22-2-2(4) authorizes the State Health Officer, on behalf of the State Board of Health, to direct that conditions prejudicial to health in public places within the State be abated."[20]

62. Under the Amended Order, fitness center and commercial gyms remained closed to non-employees.[21]

63. On May 8, 2020, Governor Ivey entered her ninth (9th) Proclamation wherein determined and ordered that "due to the continuing impact of the 2019 novel coronavirus known as COVID-19 on the State of Alabama, the conditions of disaster and extreme peril to the safety of persons and property within the State of Alabama continue to exist. Therefore, I hereby extend the State of Emergency issued on March 13, 2020, for another sixty day unless sooner terminated."[22]

64. The actions of the State of Alabama forced the Plaintiff to cease and suspend its business operations.

### *Impact of COVID-19 in Mississippi and Alabama*

65. As of the week of June 1, 2020, according to the Mississippi Department of Public Health, Itawamba County, where Fountain maintains an Anytime Fitness location, had 92 cases of COVID-19, with at least eight deaths.

---

[20] *Id.*
[21] *Id.*
[22] *See* attached Exhibit H, Ninth Supplemental State of Emergency: Coronavirus (COVID-19) Proclamation dated May 8, 2020.

15

66.     As of the week of June 1, 2020, according to the Mississippi Department of Public Health, Clay County, where Fountain maintains an Anytime Fitness location, had 134 cases of COVID-19, with at least four deaths.

67.     As of the week of June 1, 2020, according to the Alabama Department of Public Health, Escambia County, where Fountain maintains an Anytime Fitness location, had 88 cases of COVID-19, with at least three deaths.

68.     As of the week of June 1, 2020, according to the Alabama Department of Public Health, Monroe County, where Fountain maintains an Anytime Fitness location, had 62 cases of COVID-19, with at least two deaths.

***Plaintiff's Covered Losses***

69.     At each Anytime Fitness location Fountain owns, Fountain provides professional staff to offer personal training and classes on-site. Each location also provides 24-hour access to exercise equipment for members.

70.     Based on City and State Civil Authority Orders, Fountain's Fulton, Mississippi location suspend business on March 23, 2020; the West Point, Mississippi location suspended business on April 3, 2020; and the two Alabama locations suspended business on March 27, 2020.

71.     In addition, Fountain froze the memberships of its customers with the time credited to the end of their memberships. For prepaid members, Fountain credited the time period the location was closed to the end of the customer's agreement, effectively extending the contract period. For non-prepaid members, Fountain credited the members for the time period the location was closed and allowed the members to choose the month they wished the credit to be applied.

72.     Fountain suffered additional losses while billing was frozen for non-prepaid members. Non-prepaid membership contracts were not extended. At the Fulton location, billing

was frozen from April 24, 2020 through May 14, 2020. At the West Point location, billing was frozen from May 2, 2020 through May 14, 2020. The Brewton and Monroeville locations in Alabama froze billing from April 27, 2020 through May 14, 2020. Billing resumed on May 15, 2020 at all locations. Furthermore, as a result of the suspensions of operations at Fountain's facilities, it was unable to acquire new members and also to sell in-store items to members, which typically occurred in the normal course of its business operations on a daily basis. This resulted in additional economic losses to Fountain.

73.     Fountain continued to suffer losses as locations were reopened.

74.     Mississippi Governor Tate Reeves announced a plan to reopen gyms on May 11, 2020, and the Fulton and West Point locations reopened under severe limitations on the accessibility and/or use of the properties.[23] The plan was as follows:

**For businesses:**

- Before they can reopen, the entire gym must be deep-cleaned, disinfected, and sanitized top to bottom. After opening, gyms must be deep-cleaned daily.
- All gyms are expected to take every step necessary to implement the regulations, orders, and guidance from the Mississippi State Department of Health and CDC to prevent the spread of COVID-19.
- Gyms must close to the public by 10:00 PM each day.
- In addition to other gym staff, there must be at least one employee onsite during hours of operation dedicated to wiping down equipment after each use.
- All high-touch areas must be sanitized at least once every two hours.
- Exercise machines and equipment must be rearranged and/or deactivated to ensure at least 6 feet between customers.
- Gyms must post signage at each entrance stating no customer with a fever or COVID-19 symptoms are allowed in.
- Hand sanitizer must be placed at all entrances and throughout the gym floor.
- All common areas must remain closed.

**For employees:**

---

[23] https://www.wlbt.com/2020/05/08/gov-reeves-will-hold-daily-brief-covid-response/.

- All employees will be screened daily at the beginning of their shifts, including asking whether they have been in contact with a confirmed case of COVID-19 in the past 14 days and have they had a fever in the last 48 hours.
- Face coverings must be provided to all employees who come in direct contact with customers. Employees are required to wear that face covering throughout their shift and clean or replace daily.
- All employees must be provided training on how to limit the spread of COVID-19.
- Every employee on the gym floor must wear disposable gloves to be changed at least once an hour.

**For customers:**

- No more than 30% of the gym's maximum capacity. Gyms are encouraged to limit customers' time to a max of 1 hour per day.
- Classes or group exercises are allowed with customers maintaining a minimum of a 6-foot distance apart.
- Customers must sanitize their hands when entering and exiting the gym and when they move between equipment.[24]

75.     Athletic facilities in Alabama, which includes gyms, reopened on May 11, 2020, pursuant to Order of the State Health Officer.[25]  The Brewton and Monroeville locations reopened under severe limitations on the accessibility and/or use of the properties. The Order required employees of gyms to ensure: (1) no members were within six feet of members from another household; (2) no members participated in athletic activities that involved interaction within six feet of another member, used shared equipment or took place on commercial or public playground equipment; and (3) members did not congregate in lobbies, bathrooms, or other similar common areas. The Order also required that the locations limit occupancy to 50% and prohibit access to "showers, hot tubs, steam rooms, lockers, saunas and other recreational water of spa facilities."[26] Employees were required to wear masks while interacting with members.[27]

---

[24] *See id.*

[25] *See* attached Exhibit I, Order of the State Health Officer Suspending Certain Public Gatherings Due to Risk of Inspection by COVID-19.

[26] *See id.*

[27] *See id.*

76.     There has been a direct physical loss of and/or damage to the covered premises under the Policy by, among other things, contaminating the property, denying access to the property, preventing customers and employees from physically occupying the property, causing the property to be physically uninhabitable by customers and employees, causing its function to be nearly eliminated or destroyed, and/or causing a suspension of business operations on the premises.

77.     Plaintiff has suffered a suspension of normal business operations and a cessation of all operations on the premises, sustained losses of business income, and incurred extra expenses.

78.     These losses and expenses have continued through the date of filing of this action.

79.     These losses and expenses are not excluded from coverage under the Policy. Moreover, because the Policy is an all-risk policy, and Plaintiff has complied with its contractual obligations, Plaintiff is entitled to payment for these losses and expenses.

80.     Plaintiff has suffered a suspension and/or cessation of all normal business operations given the response to the global pandemic associated with the spread of COVID-19, including the actions of civil authority described herein.

81.     These losses and expenses have continued through the date of filing of this action.

82.     These losses and expenses are not excluded from coverage under the Policy. Moreover, because the Policy is an all-risk policy, and Plaintiff has complied with its contractual obligations, Plaintiff is entitled to payment for these losses and expenses.

83.     Accordingly, on April 18, 2020, Plaintiff provided notice of its losses and expenses to Defendant, consistent with the terms and procedures of the Policy.[28]

---

[28] *See* Exhibit G.

84. Contrary to the plain language of the Policy, and to Defendant's corresponding promises and contractual obligations, on April 23, 2020, Defendant refused to pay for Plaintiff's losses and expenses under the terms of the Policy.[29] It did so a mere four business day after Fountain's claims, showing Markel engaged in no meaningful investigation of the claims or review of the Policy.

## CLASS ACTION ALLEGATIONS

85. The class claims all derive directly from a single course of conduct by Defendant: their systematic, uniform, capricious and arbitrary refusal to pay insureds for covered losses and the actions taken by civil authorities to suspend business operations.

86. Plaintiff brings this action pursuant to Rules 23(a), 23(b)(1), 23(b)(2), and/or 23(b)(3), as well as 23(c)(4), of the Federal Rules of Civil Procedure, individually and on behalf of all others similarly situated. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

87. Plaintiff seeks to represent a nationwide class as the Court may deem appropriate defined as:

> a)      All Anytime Fitness franchisees that purchased Business Income and Extra Expense coverage under a policy issued by the Defendant containing the *Health Clubs Commercial Property Elite Enhancement* (Form MCP 1217 09 14), and that suffered a suspension of business operations for which Defendant has either actually denied or stated it will deny a claim for the losses or has otherwise failed to acknowledge, accept as a covered cause of loss,

---

[29] *See id.*

or pay for the covered losses ("the Business Income Coverage Class").

b)      All Anytime Fitness franchisees that purchased Extended Business Income coverage under a policy issued by the Defendant containing the *Health Clubs Commercial Property Elite Enhancement* (Form MCP 1217 09 14), and that incurred extra expenses to avoid or minimize the suspension of business operations for which Defendant has either actually denied or stated it will deny a claim for the extra expenses or has otherwise failed to acknowledge, accept as a covered expense, or pay for the covered expenses ("the Extra Expense Coverage Class").

c)      All Anytime Fitness franchisees that purchased Civil Authority coverage under a policy issued by the Defendant containing the *Health Clubs Commercial Property Elite Enhancement* (Form MCP 1217 09 14), and that suffered an actual loss of Business Income and/or Extra Expense caused by an action of a civil authority that prohibited access to the premises, and for which Defendant has either actually denied or stated it will deny a claim for the losses or has otherwise failed to acknowledge, accept as a covered cause of loss, or pay for the covered losses ("the Civil Authority Coverage Class").

88.    Excluded from each defined proposed Classes are Defendant and any of their members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns;

governmental entities; Class Counsel and their employees; and the judicial officers and Court staff assigned to this case and their immediate family members.

89.     Plaintiff reserves the right to modify, expand, or amend the definitions of the proposed Classes, as appropriate, during the course of this litigation.

90.     This action has been brought and may properly be maintained on behalf of each Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

### *Numerosity and Ascertainability*

91.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1). The members of each proposed Class are so numerous that individual joinder of all Class members is impracticable. There are, at minimum, thousands of members of each proposed Class, and these individuals and entities are spread out across the State and the United States.

92.     The identity of Class members is ascertainable, as the names and addresses of all Class members can be identified in Defendant's or its agents' books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

### *Predominance of Common Issues*

93.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) because this action involves common questions of law and fact that predominate over any questions affecting only individual Class members. Defendant issued all-risk policies to all the members of each proposed Class in exchange for payment of premiums by the Class members. The questions of law and fact affecting all Class members include, without limitation, the following:

22

a)      Whether Plaintiff and the Class members suffered a covered cause of loss under the policies issued to members of the Class;

b)      Whether Defendant wrongfully, capriciously and arbitrarily denied all claims based on the facts set forth herein;

c)      Whether Defendant's Business Income coverage applies based on the facts set forth herein;

d)      Whether Defendant's Civil Authority coverage applies to a loss of Business Income based on the facts set forth herein;

e)      Whether Defendant's Extra Expense coverage applies to efforts to avoid or minimize a loss caused by the suspension of business based on the facts set forth herein;

f)      Whether Defendant has breached its contracts of insurance through a uniform and blanket denial of all claims for business losses based on the facts set forth herein;

g)      Whether the Defendant acts in bad faith, breach of contract and the duty of good faith and fair dealing through a uniform and blanket denial of all claims for business losses based on the facts set forth herein; and

h)      Whether Plaintiff and the Class members suffered damages as a result of Defendant's actions; and

i)      Whether Plaintiff and the Class members are entitled to an award of reasonable attorneys' fees, interest, and costs.

**_Typicality_**

94.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(3) because Plaintiff's claims are typical of the claims of the Class members and arise from the same course of conduct by Defendant. Plaintiff and the other Class members are all similarly affected by Defendant's refusal to pay under their property insurance policies. Plaintiff's claims are based upon the same legal theories as those of the other Class members. Plaintiff and the other Class members sustained damages as a direct and proximate result of the same wrongful practices in which Defendant engaged. The relief Plaintiff seeks is typical of the relief sought for the absent Class members.

***Adequacy of Representation***

95.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(4) because Plaintiff will fairly and adequately represent and protect the interests of Class members. Plaintiff has retained counsel with substantial experience in prosecuting complex class action litigation.

96.     Plaintiff and its counsel are committed to vigorously prosecuting this action on behalf of the Class members and have the financial resources to do so. Neither Plaintiff nor its counsel has interests adverse to those of the Class members.

***Inconsistent or Varying Adjudications and the Risk of Impediments to Other Class Members' Interests***

97.     This action satisfies the requirements of Fed. R. Civ. P. 23(b)(1). Plaintiff seeks class-wide adjudication as to the interpretation and scope of Defendant's health club insurance policies that use the same language and terms as the Policy. The prosecution of separate actions by individual members of the proposed Classes would create an imminent risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant.

***Final Injunctive and/or Corresponding Declaratory Relief with respect to the Class is Appropriate***

98.     This action satisfies the requirements of Fed. R. Civ. P. 23(b)(2) because Defendant acted or refused to act on grounds generally applicable to Plaintiff and the members of the Classes, thereby making appropriate final injunctive and/or corresponding declaratory relief with respect to the Class members. The class claims all derive directly from Defendant's systematic, uniform, capricious and arbitrary refusal to pay insureds for losses suffered due to actions taken by civil authorities to suspend or interrupt business operations in response to the pandemic associated with the spread of COVID-19. Defendant's actions or refusal to act are grounded upon the same generally applicable legal theories.

### *Superiority*

99.     This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3) because a class action is superior to other available methods for the fair and efficient group-wide adjudication of this controversy. The common questions of law and of fact regarding Defendant's conduct and the interpretation of the common language in their health club insurance policies predominate over any questions affecting only individual Class members.

100.    Because the damages suffered by certain individual Class members may be relatively small, the expense and burden of individual litigation would make it very difficult for all individual Class members to redress the wrongs done to each of them individually, such that many Class members would have no rational economic interest in individually controlling the prosecution of specific actions, and the burden imposed on the judicial system by individual litigation by even a small fraction of the Class would be enormous, making class adjudication the superior alternative under Fed. R. Civ. P. 23(b)(3)(A).

101.    The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more

25

effectively protects the rights of each Class member than would piecemeal litigation. Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the Court, and the public of class treatment in this Court, making class adjudication superior to other alternatives, under Fed. R. Civ. P. 23(b)(3)(D).

102.    Plaintiff is not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Rule 23 provides the Court with authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges. The Court may, on motion of Plaintiff or on its own determination, certify nationwide, statewide and/or multistate classes for claims sharing common legal questions; utilize the provisions of Rule 23(c)(4) to certify any particular claims, issues, or common questions of fact or law for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Rule 23(c)(5) to divide any Class into subclasses.

## CAUSES OF ACTION
## COUNT I:
## DECLARATORY JUDGMENT
### (On behalf of the Business Income Coverage Class)

103.    Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

104.    Plaintiff brings this Count both individually and on behalf of the other members of the Business Income Coverage Class.

105.    Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

106.     Plaintiff's Policy, as well as the policies of other Business Income Coverage Class members, are insurance contracts under which Defendant was paid premiums in exchange for promises to pay Class members' losses for claims covered by the Policy.

107.     In the Policy, Defendant promised to pay for losses of business income and extra expense sustained as a result of perils not excluded under the Policy. Specifically, Defendant promised to pay for losses of business income and extra expense sustained as a result of a suspension of business operations during the period of restoration.

108.     Plaintiff and Class members suffered direct physical loss of or damage to Plaintiff's locations and other Class members' insured premises, resulting in interruptions or suspensions of business operations at the locations. These suspensions and interruptions have caused Plaintiff and Class members to suffer losses of business income and extra expense.

109.     These suspensions and interruptions, and the resulting losses, triggered business income and extra expense coverage under the Policy and other Class members' policies.

110.     Plaintiff and the other Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

111.     Defendant, without justification, denies that the Policy and other Class members' policies provide coverage for these losses.

112.     Plaintiff seeks a Declaratory Judgment that its Policy and other Class members' policies provide coverage for the losses of business income and extra expense attributable to the facts set forth above.

113.     An actual case or controversy exists regarding Plaintiff's and other Class members' rights and Defendant's obligations to reimburse Plaintiff and other Class members for the full amount of these losses. Accordingly, the Declaratory Judgment sought is justiciable.

WHEREFORE, Plaintiff requests that this Court enter a Declaratory Judgment declaring that the Policy and other Class members' policies provide coverage for Class members' losses of business income.

## COUNT II: BREACH OF CONTRACT
### (On behalf of the Business Income Coverage Class)

114.    Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

115.    Plaintiff brings this Count both individually and on behalf of the other members of the Business Income Coverage Class.

116.    Plaintiff's Policy, as well as the policies of other Business Income Coverage Class members, are insurance contracts under which Defendant was paid premiums in exchange for promises to pay Class members' losses for claims covered by the Policy.

117.    In the Policy, Defendant promised to pay for losses of business income and extra expense incurred as a result of perils not excluded under the Policy. Specifically, Defendant promised to pay for losses of business income and extra expense sustained as a result of a suspension of business operations during the period of restoration.

118.    Plaintiff and Class members have suffered a direct physical loss of or damage to Plaintiff's locations and other Class members' insured premises as a result of interruptions or suspensions of business operations at these premises. These interruptions and suspensions have caused Class members to suffer losses of business income and extra expense.

119.    These losses triggered business income and extra expense coverage under both the Policy and other Class members' policies.

120.    Plaintiff and the other Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

121.    Defendant has denied coverage and refused performance under the Policy and other Class members' policies by denying coverage for these losses and expenses. Accordingly, Defendant is in breach of the Policy and other Class members' policies.

122.    As a result of Defendant's breaches of the Policy and other Class members' policies, Plaintiff and other Class members have suffered actual and substantial damages for which Defendant is liable.

WHEREFORE, Plaintiff, both individually and on behalf of other Class members, seeks compensatory damages resulting from Defendant's breaches of the Policy and other Class Members' policies and seek all other relief deemed appropriate by this Court.

### COUNT III: BAD FAITH BREACH OF CONTRACT AND
### THE DUTY OF GOOD FAITH AND FAIR DEALING
### (On behalf of the Business Income Coverage Class)

123.    Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

124.    Plaintiff brings this Count both individually and on behalf of the other members of the Business Income Coverage Class.

125.    Plaintiff's Policy, as well as the policies of other Business Income Coverage Class members, are insurance contracts under which Defendant was paid premiums in exchange for promises to pay Class members' losses for claims covered by the Policy.

126.    In the Policy, Defendant promised to pay for losses of business income and extra expense incurred as a result of perils not excluded under the Policy. Specifically, Defendant promised to pay for losses of business income and extra expense sustained as a result of a suspension of business operations during the period of restoration.

29

127.    Plaintiff and Class members suffered an actual loss of business income and extra expense due to the necessary suspension of Plaintiff's commercial gyms and other Class members' business operations at insured premises and said suspension(s) were caused by direct physical loss of and damage to Plaintiff's commercial gyms and other Class members' insured premises caused by or resulting from Covered Causes of Loss under the Policy and other Class members' policies. These actual losses, therefore, triggered Business Income and Extra Expense coverage under both the Policy and other Class members' policies.

128.    These Covered Causes of Loss were direct, physical and foreseeable causes of loss under the Policy and other Class members' policies and they each caused, and/or resulted in, dangerous physical conditions at, and physical injuries to, the Plaintiff's commercial gyms, other Class members' insured premises and property immediately adjacent to each. The subject Covered Causes of Loss pose a serious risk to and endanger(ed) the public's health, safety and property and rendered the Plaintiff's commercial gyms and other Class members' insured premises unusable and/or uninhabitable; thus, mandating a suspension of business operations.

129.    These losses and expenses are not excluded from coverage under the Policy. The Policy is an all-risk policy meaning Covered Causes of Loss are determined by exclusions and the subject Covered Causes of Loss were not excluded under the Policy.

130.    Furthermore, these Covered Causes of Loss caused direct physical loss and damage to the Plaintiff's various business premises and the other Class Members' insured premises resulting in dangerous physical conditions, the nature of such loss and damage to property having been recognized by civil authorities in Orders addressing COVID-19.

131.    Plaintiff and the other Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

132.    The actions of the Defendant give rise to a cause of action for bad faith breach of contract and the duty of good faith and fair dealing as Plaintiff and other Class members were covered under Plaintiff's Policy, as well as the policies of other Business Income Coverage Class members, and the Defendant has breached the terms of said policies by denying business income and extra expense coverage to the Plaintiff and other Class members. Defendant's actions in breaching the terms of the Plaintiff's Policy and the other Class Members' policies, in bad faith, have proximately caused damages to Plaintiff and other Class members and the damages were reasonably foreseeable to the Defendant.

133.    It appears that the Defendant's conduct was performed because it placed its own financial interests before the Plaintiff's and other Class Members' financial interests.

134.    Further, the actions of the Defendant in denying business income and extra expense coverage to the Plaintiff and other Class Members was done so without any legitimate basis or arguable reason and constitute intentional and/or malicious conduct or gross negligence and reckless disregard.

135.    Implied in the Plaintiff's Policy and the other Class Members' policies is a duty of good faith and fair dealing with respect to conduct encompassed by contractual relations. Defendant's conduct as previously mentioned breached the duty of good faith and fair dealing, which further gives rise to the tort of bad faith for the breach of contract.

136.    Defendant, at all times relevant hereto, owed Plaintiff and other Class Members a duty to exercise good faith and an obligation to deal fairly with them; however, the denial of business income and extra expense coverage by Defendant constituted a bad faith breach of contract and was made with only the Defendant's best interests in mind and in total disregard of the contractual rights of Plaintiff and other Class Members.

137.     Defendant's bad faith material breach(es) of the Plaintiff's Policy, as well as other Class members' policies, has resulted in actual and substantial damages to the Plaintiff and Business Income Coverage Class members, depriving all of the benefit of their bargain, and represents, in addition to warranting contractual damages, incidental damages and consequential damages, an independent tort entitling Plaintiff and other Class Members to punitive damages in an amount which will punish the Defendant for its intentional, grossly negligent and/or reckless conduct as well as to deter Defendant and others from similar misconduct in the future.

WHEREFORE, Plaintiff, both individually and on behalf of other Class members, seeks compensatory damages, contractual damages, incidental damages, consequential damages, and punitive damages, resulting from Defendant's bad faith breach(es) of the Policy and other Class Members' policies and seek all other relief deemed appropriate by this Court.

## COUNT IV:
## DECLARATORY JUDGMENT
### (On behalf of the Extended Business Income Coverage Class)

138.     Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

139.     Plaintiff brings this Count both individually and on behalf of the other members of the Extra Expense Coverage Class.

140.     Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

141.     Plaintiff's Policy, as well as the policies of other Extended Business Income Coverage Class members, are insurance contracts under which Defendant was paid premiums in exchange for promises to pay Class members' losses for claims covered by the Policy.

142.     Specifically, Defendant promised to pay for extended business income for losses incurred by Plaintiff and other Class members during the period of restoration that the insureds would not have incurred if there had been no loss or damage to the insured premises. Extended business income included income to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

143.     Plaintiff and Class members suffered direct physical loss of or damage to Plaintiff's locations and other Class members' insured premises, resulting in suspensions or interruptions of business operations at these premises. As a result, Plaintiff and other Class members have incurred losses, as defined in the Policy and other Class members' policies.

144.     These losses triggered Extended Business Income coverage under the Policy and other Class members' policies.

145.     Plaintiff and the other Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

146.     Defendant, without justification, denies that the Policy and other Class members' policies provide coverage for this Extended Business Income.

147.     Plaintiff, both individually and on behalf of the other members of the Extended Business Income Coverage Class, seeks a Declaratory Judgment that its Policy, and those of other members of the Extended Business Income Coverage Class, provides coverage for extended business income.

148.     An actual case or controversy exists regarding Class members' rights and Defendant's obligations under Class members' policies to reimburse Class members for extended business income. Accordingly, the Declaratory Judgment sought is justiciable.

WHEREFORE, Plaintiff requests that this Court enter a Declaratory Judgment declaring that the Policy and other Class members' policies provide coverage for Class members' extended business income

## COUNT V: BREACH OF CONTRACT
### (On behalf of the Extended Business Income Coverage Class)

149.    Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

150.    Plaintiff brings this Count individually and on behalf of the other members of the Extended Business Income Coverage Class.

151.    Plaintiff's Policy, as well as the policies of other Extended Business Income Coverage Class members, are insurance contracts under which Defendant was paid premiums in exchange for promises to pay Class members' losses for claims covered by the Policy.

152.    Specifically, Defendant promised to pay for extended business income for losses incurred by Plaintiff and other Class members during the period of restoration that the insureds would not have incurred if there had been no loss or damage to the insured premises. Extended business income losses included income to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

153.    Plaintiff and Class members suffered direct physical loss of or damage to the Plaintiff's locations and other Class members' insured premises, resulting in suspensions and interruptions of business operations at these premises. These suspensions and interruptions have caused Class members to incur Extra Expenses.

154.    These expenses triggered extended business income coverage under the Policy and other Class members' policies.

155.    Plaintiff and the other Class members have complied with all applicable provisions of the Policy, including payment of premiums.

156.    Defendant has denied coverage and refused performance extended business income. Accordingly, Defendant is in breach of the Policy and other Class members' policies.

157.    As a result of Defendant's breaches of the Policy and other Class members' policies, Plaintiff and other Class members have suffered actual and substantial damages for which Defendant is liable.

WHEREFORE, Plaintiff, individually and on behalf of other Class members, seeks compensatory damages resulting from Defendant's breaches of the Policy and other Class Members' policies and seek all other relief deemed appropriate by this Court.

### COUNT VI: BAD FAITH BREACH OF CONTRACT AND THE DUTY OF GOOD FAITH AND FAIR DEALING
**(On behalf of the Extended Business Income Coverage Class)**

158.    Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

159.    Plaintiff brings this Count both individually and on behalf of the other members of the Extra Expense Coverage Class.

160.    Plaintiff's Policy, as well as the policies of other Extended Business Income Coverage Class members, are insurance contracts under which Defendant was paid premiums in exchange for promises to pay Class members' losses for claims covered by the Policy.

161.    In the Policy, Defendant promised to pay extended business income for losses, under the Health Clubs Commercial Property Elite Enhancement provision of the Plaintiff's Policy and other Class Members' policies, incurred as a result of perils not excluded under the Policy.

Specifically, Defendant promised to pay for losses of Extended Business Income sustained as a result of a suspension of business operations during the period of restoration.

162.     Plaintiff and Class members suffered an actual loss of business income due to the necessary Suspension of Plaintiff's commercial gyms and other Class members' business operations at insured premises and said suspension(s) were caused by direct physical loss of and damage to Plaintiff's commercial gyms and other Class members' insured premises caused by or resulting from Covered Causes of Loss under the Policy and other Class members' policies. These actual losses, therefore, triggered Health Clubs Commercial Property Elite Enhancement Extended Business Income coverage under both the Policy and other Class members' policies.

163.     These Covered Causes of Loss were direct, physical and foreseeable causes of loss under the Policy and other Class members' policies and they each caused, and/or resulted in, dangerous physical conditions at, and physical injuries to, the Plaintiff's commercial gyms, other Class members' insured premises and property immediately adjacent to each. The subject Covered Causes of Loss pose a serious risk to and endanger(ed) the public's health, safety and property and rendered the Plaintiff's commercial gyms and other Class members' insured premises unusable and/or uninhabitable; thus, mandating a suspension of business operations.

164.     These losses and expenses are not excluded from coverage under the Policy. The Policy is an all-risk policy meaning Covered Causes of Loss are determined by exclusions and the subject Covered Causes of Loss were not excluded under the Policy.

165.     Furthermore, these Covered Causes of Loss caused direct physical loss and damage to the Plaintiff's various business premises and the other Class Members' insured premises resulting in dangerous physical conditions, the nature of such loss and damage to property having been recognized by civil authorities in Orders addressing COVID-19.

166.    Plaintiff and the other Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

167.    The actions of the Defendant give rise to a cause of action for bad faith breach of contract and the duty of good faith and fair dealing as Plaintiff and other Class members were covered under Plaintiff's Policy, as well as the policies of other Health Club Elite Enhancement Extended Business Income Coverage Class members, and the Defendant has breached the terms of said policies by denying extended business income coverage to the Plaintiff and other Class members. Defendant's actions in breaching the terms of the Plaintiff's Policy and the other Class Members' policies, in bad faith, have proximately caused damages to Plaintiff and other Class members and the damages were reasonably foreseeable to the Defendant.

168.    It appears that the Defendant's conduct was performed because it placed its own financial interests before the Plaintiff's and other Class Members' financial interests.

169.    Further, the actions of the Defendant in denying Health Clubs Commercial Property Elite Enhancement extended business income coverage to the Plaintiff and other Class Members was done so without any legitimate basis or arguable reason and constitute intentional and/or malicious conduct or gross negligence and reckless disregard.

170.    Implied in the Plaintiff's Policy and the other Class Members' policies is a duty of good faith and fair dealing with respect to conduct encompassed by contractual relations. Defendant's conduct as previously mentioned breached the duty of good faith and fair dealing, which further gives rise to the tort of bad faith for the breach of contract.

171.    Defendant, at all times relevant hereto, owed Plaintiff and other Class Members a duty to exercise good faith and an obligation to deal fairly with them; however, the denial of Health Clubs Commercial Property Elite Enhancement extended business income coverage by Defendant

constituted a bad faith breach of contract and was totally made with only the Defendant's best interests in mind and in total disregard of the contractual rights of Plaintiff and other Class Members.

172.    Defendant's bad faith material breach(es) of the Plaintiff's Policy, as well as other Class members' policies, has resulted in actual and substantial damages to the Plaintiff and Extended Business Income Coverage Class members, depriving all of the benefit of their bargain, and represents, in addition to warranting contractual damages, incidental damages, and consequential damages, an independent tort entitling Plaintiff and other Class Members to punitive damages in an amount which will punish the Defendant for its intentional, grossly negligent, and/or reckless conduct as well as to deter Defendant and others from similar misconduct in the future.

WHEREFORE, Plaintiff, both individually and on behalf of other Class members, seeks compensatory damages, contractual damages, incidental damages, consequential damages, and punitive damages, resulting from Defendant's bad faith breach(es) of the Policy and other Class Members' policies and seek all other relief deemed appropriate by this Court.

## COUNT VII: DECLARATORY JUDGMENT
### (On behalf of the Civil Authority Coverage Class)

173.    Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

174.    Plaintiff brings this Count both individually and on behalf of the other members of the Civil Authority Coverage Class. Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

175.    Plaintiff's Policy, as well as the policies of other Civil Authority Coverage Class members, are insurance contracts under which Defendant was paid premiums in exchange for promises to pay Class members' losses for claims covered by the policies.

176.     In the Policy and other Class members' policies, Defendant promised to pay for losses of business income sustained and extra expenses incurred when, among other things, a covered cause of loss causes damage to property near the insured premises, the civil authority prohibits access to property near the insured premises, and the civil authority action is taken in response to dangerous physical conditions.

177.     Plaintiff and other Class members have suffered losses and incurred expenses as a result of actions of civil authorities that prohibited access to insured premises under the Policy and Class members' policies.

178.     These losses satisfied all requirements to trigger Civil Authority coverage under the Policy and other Class members' policies.

179.     Plaintiff and the other Class members have complied with all applicable provisions of the Policy, including payment of premiums.

180.     Defendant, without justification, denies that the Policy provides coverage for these losses.

181.     Plaintiff seeks a Declaratory Judgment that its Policy and other Class members' policies provide coverage for the losses that Class members have sustained and extra expenses they have incurred caused by actions of civil authorities.

182.     An actual case or controversy exists regarding Class members' rights and Defendant's obligations under Class members' policies to reimburse Class members for these losses and extra expenses. Accordingly, the Declaratory Judgment sought is justiciable.

WHEREFORE, Plaintiff, both individually and on behalf of other Class members, requests that this Court enter a Declaratory Judgment declaring that the Policy provides Civil Authority coverage for the losses and extra expenses incurred by Plaintiff and the other Class members.

## COUNT VIII: BREACH OF CONTRACT
### (On behalf of the Civil Authority Coverage Class)

183.    Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

184.    Plaintiff brings this Count individually and on behalf of the other members of the Civil Authority Coverage Class.

185.    Plaintiff's Policy, as well as the policies of other Civil Authority Coverage Class members, are insurance contracts under which Defendant was paid premiums in exchange for promises to pay Class members' losses and expenses covered by the Policy.

186.    In the Policy and other Class members' policies, Defendant promised to pay for losses of business income sustained and extra expenses incurred when a covered cause of loss causes damage to property near the insured premises, the civil authority prohibits access to property near the insured premises, and the civil authority action is taken in response to dangerous physical conditions.

187.    Plaintiff and other Class members have suffered losses and incurred expenses as a result of actions of civil authorities that prohibited access to insured premises under the Policy and Class members' policies.

188.    These losses satisfied all requirements to trigger Civil Authority coverage under the Policy and other Class members' policies.

189.    Plaintiff and the other Class members have complied with all applicable provisions of the Policy, including payment of premiums.

190.    Defendant has refused performance under the Policy and other Class members' policies by denying coverage for these losses and expenses. Accordingly, Defendant is in breach of the Policy and other Class members' policies.

191.    As a result of Defendant's breaches of the Policy and other Class members' policies, Plaintiff and other Class members have suffered actual and substantial damages for which Defendant is liable.

WHEREFORE, Plaintiff seeks compensatory damages resulting from Defendant's breaches of the Policy and other Class members' policies, and seek all other relief deemed appropriate by this Court.

### COUNT IX: BAD FAITH BREACH OF CONTRACT AND THE DUTY OF GOOD FAITH AND FAIR DEALING
(On behalf of the Civil Authority Coverage Class)

192.    Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

193.    Plaintiff brings this Count individually and on behalf of the other members of the Civil Authority Coverage Class.

194.    Plaintiff's Policy, as well as the policies of other Civil Authority Coverage Class members, are insurance contracts under which Defendant was paid premiums in exchange for promises to pay Class members' losses and expenses covered by the Policy.

195.    In the Policy and other Class members' policies, Defendant promised to pay for actual loss of business income sustained and necessary extra expenses incurred when a Covered Cause of Loss caused damage to property within one (1) mile of Plaintiff's various business premises, and within one (1) mile of the other Class Members' insured premises, and as a result of damage to property dangerous physical conditions resulting from the Covered Cause of Loss existed in the immediate area prompting civil authorities to issue Orders prohibiting the public's access to the area immediately surrounding the damaged property, including the Plaintiff's business premises and other Class Members' insured premises.

41

196. These Covered Causes of Loss were direct, physical and foreseeable causes of loss under the Policy and other Class members' policies and they each caused, and/or resulted in, dangerous physical conditions at, and physical injuries to, the Plaintiff's commercial gyms, other Class members' insured premises and property immediately adjacent to each. The subject Covered Causes of Loss pose a serious risk to and endanger(ed) the public's health, safety and property and rendered the Plaintiff's commercial gyms, other Class members' insured premises and areas within one mile of the Plaintiff's business premises and other Class Members' insured premises, damaged, unusable and/or uninhabitable; thus, prompting the Orders of civil authorities prohibiting access to the same.

197. These losses and expenses are not excluded from coverage under the Policy. The Policy is an all-risk policy meaning Covered Causes of Loss are determined by exclusions and the subject Covered Causes of Loss were not excluded under the Policy.

198. Furthermore, these Covered Causes of Loss caused damage to property in the area within one (1) mile of Plaintiff's various business premises, and the other Class Members' insured premises, resulting in dangerous physical conditions prompting civil authorities, such as, for example, the City of Fulton, Mississippi, the City of West Point, Mississippi, the State of Mississippi and the State of Alabama, to issue Orders prohibiting the public's access to the area immediately surrounding the damaged property, including access to the Plaintiff's business premises and other Class Members' insured premises.

199. Accordingly, these losses satisfied all requirements to trigger Civil Authority coverage under the Policy and other Class members' policies.

200. Plaintiff and the other Class members have complied with all applicable provisions of the Policy, including payment of premiums.

201.   The actions of the Defendant give rise to a cause of action for bad faith breach of contract and the duty of good faith and fair dealing as Plaintiff and other Class members were covered under Plaintiff's Policy, as well as the policies of other Civil Authority Coverage Class members, and the Defendant has breached the terms of said policies by denying Civil Authority coverage to the Plaintiff and other Class members. Defendant's actions in breaching the terms of the Plaintiff's Policy and the other Class Members' policies, in bad faith, have proximately caused damages to Plaintiff and other Class members and the damages were reasonably foreseeable to the Defendant.

202.   It appears that the Defendant's conduct was performed because it placed its own financial interests before the Plaintiff's and other Class Members' financial interests.

203.   Further, the actions of the Defendant in denying Civil Authority coverage to the Plaintiff and other Class Members was done so without any legitimate basis or arguable reason and constitute intentional and/or malicious conduct or gross negligence and reckless disregard.

204.   Implied in the Plaintiff's Policy and the other Class Members' policies is a duty of good faith and fair dealing with respect to conduct encompassed by contractual relations. Defendant's conduct as previously mentioned breached the duty of good faith and fair dealing, which further gives rise to the tort of bad faith for the breach of contract.

205.   Defendant, at all times relevant hereto, owed Plaintiff and other Class Members a duty to exercise good faith and an obligation to deal fairly with them; however, the denial of Civil Authority coverage by Defendant constituted a bad faith breach of contract and was totally made with only the Defendant's best interests in mind and in total disregard of the contractual rights of Plaintiff and other Class Members.

206.    Defendant's bad faith material breach(es) of the Plaintiff's Policy, as well as other Class members' policies, has resulted in actual and substantial damages to the Plaintiff and Civil Authority Coverage Class members, depriving all of the benefit of their bargain, and represents, in addition to warranting contractual damages, incidental damages, and consequential damages, an independent tort entitling Plaintiff and other Class Members to punitive damages in an amount which will punish the Defendant for its intentional, grossly negligent, and/or reckless conduct as well as to deter Defendant and others from similar misconduct in the future.

WHEREFORE, Plaintiff, both individually and on behalf of other Class members, seeks compensatory damages, contractual damages, incidental damages, consequential damages, and punitive damages, resulting from Defendant's bad faith breach(es) of the Policy and other Class Members' policies and seek all other relief deemed appropriate by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendant, as follows:

A.    Entering an order certifying the proposed Classes, designating Plaintiff as Class representative for each of the Classes, and appointing Plaintiff's attorneys as Counsel for the Classes;

B.    Entering declaratory judgments on Counts I, IV, and VII in favor of Plaintiff and the members of the Business Income Coverage Class, Extended Business Income Coverage Class and Civil Authority Coverage Class as follows:

i.    That all Business Income and Extra Expense, Civil Authority and Extended Business Income losses and expenses incurred and sustained based on the facts and circumstances set forth above are

44

insured and covered losses and expenses under Plaintiff's and Class members' policies; and

ii.     Defendant Markel Insurance Company is obligated to pay for the full amount of the Business Income and Extra Expense, Civil Authority and Extended Business Income losses and expenses sustained and incurred, and to be sustained and incurred, based on the facts and circumstances set forth above are insured and covered losses and expenses under Plaintiff and Class members' policies;

C.     Entering judgments on counts II, V, and VIII in favor of Plaintiff and the members of the Business Income Coverage Class, Extended Business Income Coverage Class and Civil Authority Coverage Class, and awarding damages for breach of contract in an amount to be determined at trial;

D.     Entering judgments on counts III, VI, IX in favor of the Plaintiff and the members of the Business Income Coverage Class, Extended Business Income Coverage Class and Civil Authority Coverage Class, and awarding compensatory damages, incidental damages, consequential damages, and punitive damages for the Defendant's bad faith material breach(es) in an amount to be determined at trial;

E.     An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

F.     Such other or further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

The undersigned hereby demands a trial by jury as to all issues so triable.

This the 24th day of June, 2020

/s/ Lisa B. Weinstein
Lisa B. Weinstein
GRANT & EISENHOFER P.A.
30 N. LaSalle Street, Suite 2350
Chicago, IL 60602
Phone: 312-610-5350

Diandra S. Debrosse Zimmermann**
April S. Rogers**
GRANT & EISENHOFER P.A.
505 20th Street N, Suite 1450
Birmingham, AL 35203
Phone: 205-453-6415

Adam J. Gomez**
GRANT & EISENHOFER P.A.
123 Justison Street, 7th Floor
Wilmington, DE 19801
Phone: 302-622-7100

Elizabeth Graham**
GRANT & EISENHOFER P.A.
One Market Street
Spear Tower, 36th Floor
San Francisco, CA 94105
Phone: 415-789-4367

L.N. Chandler Rogers**
Rogers Law Group, P.A.
201 East Bankhead Street
P.O. Box 1771
New Albany, MS 38652
Phone: 662-538-5990

Winston B. Collier**
The Collier Firm, P.A.
P.O. Box 1702
Oxford, MS 38655
Phone: 662-234-0320

*\*\*Pro Hac Vice Application to be filed*
*Attorneys for Plaintiff*

**PLEASE SERVE DEFENDANTS AS FOLLOWS:**

**Markel Insurance Company**
10 Parkway North Boulevard
Suite 100
Deerfield, Illinois, 60015